UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| DEREK MOORE, ) | Case No. 18-CR-10297-LTS |
| ) | |
| Defendant ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The United States of America, through Assistant United States Attorney David G. Tobin, respectfully opposes Defendant Derek Moore's Motion for Compassionate Release ("Defendant's Motion"). Docket No. 197. On December 14, 2021, this Court sentenced the defendant to four months' imprisonment after finding that he had violated the terms and conditions of his supervised release. Docket No. 193. The Defendant's Motion should be denied for the following reasons: (1) the defendant has not met his burden to establish "extraordinary and compelling" reasons to warrant early release from incarceration; (2) the defendant remains a danger to the community; and (3) the Section 3553(a) factors weigh strongly in favor of the defendant's continued incarceration.1

I. **PROCEDURAL HISTORY**

On August 29, 2018, a grand jury in Boston, Massachusetts returned an Indictment charging the defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Docket No. 9. On April 16, 2020, the defendant pleaded guilty to the Indictment.

---

1 For the purposes of this opposition, the government assumes *arguendo* that the defendant is excused from exhausting administrative remedies as he is not currently incarcerated in a Bureau of Prisons facility.

1

Docket No. 129.  On May 7, 2020, this Court imposed a "time served" sentence to commence on the following day and 36 months of supervised release.  Docket No. 139.

On December 14, 2021, after a contested final revocation hearing, this Court found the defendant in violation of the conditions of his supervised release.  The violations arose, in part, when the defendant was arrest by the Boston Police on November 4, 2021 and charged with strangulation and suffocation of his wife.  Another violation involved the defendant's failure to report a change in residence to Probation.

## II.    LEGAL FRAMEWORK

In general, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §3582(c); *see Dillon v. United States,* 560 817, 824-25 (2010). "[T]here is no 'inherent authority' for a district court to modify a sentence as it pleases; indeed, a district court's discretion to modify a sentence is an exception to [§3582's] general rule" barring modification.  *United States v. Cunningham*, 554 F.3d 703, 708 (7th Cir. 2009); *cf. United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) (noting that 18 U.S.C. §3582(b) "states that a district court may not modify a term of imprisonment once it has been imposed unless the Bureau of Prisons moves for a reduction, the Sentencing Commission amends the applicable Guidelines range, or another statute or Rule 35 expressly permits the court to do so.").

Section 3582(c)(1)(A) is an exception to this general rule. The statute, adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the BOP Director. The provision was amended by Section 603(b) of the First Step Act, effective December 21, 2018. Under the statute as amended, a court may now consider a

defendant's motion for compassionate release following the exhaustion of his or her administrative remedies with Bureau of Prisons ("BOP") or thirty days after submitting a request to the appropriate warden, whichever is sooner. The statute provides:

> (c) **Modification of an imposed term of imprisonment.** – The court may not modify a term of imprisonment once it has been imposed except that –
>
> > (1) in any case –
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, it if finds that—
> > >
> > > > (i) extraordinary and compelling reasons warrant such a reduction …
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission ….

18 U.S.C. § 3582(c)(1)(A). Only once the exhaustion requirement is satisfied,[2] the court may modify a sentence only if, "after considering the factors set forth in section 3553(a) to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." *Id.* § 3582(c)(1)(A)(i). The proposed reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A).

The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. U.S.S.G. 1B1.13, App. Note 1. These include an

---

2 The exhaustion requirement is not jurisdictional, but it is mandatory. *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833-836 (6th Cir. 2020).

assessment of the defendant's medical condition, age, family circumstances, and other reasons. The relevant language from the Sentencing Guidelines is as follows:

> (A) <u>Medical Condition of the Defendant</u>. –
>
> (i) The defendant is suffering from a terminal illness (<u>i.e.</u>, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (<u>i.e.</u>, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is –
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

"Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. 1B1.13, App. Note 3. In addition, a court may reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* App. Note 1(D). The BOP Director's reasons are set forth in the *BOP Program Statement 5050.50* (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. The document was amended following passage of the First Step Act and replaced the previous program statement. It contains standards that are both more extensive than and slightly different from those stated in the U.S.S.G. 1B1.13 Policy Statement.

4

Even if extraordinary and compelling reasons exists, however, a court should only grant a motion for release if it determines that the defendant is not a danger to the public. U.S.S.G. 1B1.13(2). And the court must consider, in general, whether the § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. §3582(c)(1)(A); U.S.S.G. 1B1.13. The defendant bears the burden of proving that he is entitled to compassionate release. *See, e.g., United States v. Amparo,* No. 19-cr-10004-ADB, 2020 WL 6520989, at *2 (D. Mass. Nov. 4, 2020) (Burroughs, J.) (citing *United States v. Butler,* 970 F.2d 1017, 1026 (2d Cir. 1992)). The Defendant fails to meet this burden.

III. **ARGUMENT**

    a. **The Defendant has Failed to Meet his Burden to Establish that an "Extraordinary and Compelling" Reason Exists for this Court to Order Early Release**

The defendant asks this Court to immediately release him from custody at the Wyatt Detention Center and allow him to reside with his wife. The defendant's motion for compassionate release is based on a positive test for COVID-19, his contention that he is at greater risk of severe symptoms because he is a Black male with "degenerative multiple sclerosis," and a staff shortage at Wyatt. The defendant's stated reasons for compassionate release are woefully inadequate to meet the high standard set by statute. The defendant does not allege that he is experiencing any symptoms of COVID-19[3], he does not allege that the "staff shortage" has had any detrimental impact on his care, and, of course, he cannot allege that he is at risk of contracting COVID-19.

---

3 After reviewing the defendant's Wyatt medical records and communicating with Wyatt staff, the undersigned avers that although the defendant did test positive for COVID-19, he has now been cleared by the medical staff, and his medical records make no mention of the defendant exhibiting symptoms of COVID-19.

Even the defendant's argument that as a Black man with "degenerative multiple sclerosis" he is at heightened risk from COVID-19 fails as justification for early release. The National Multiple Sclerosis Society notes "[c]urrent evidence shows that simply having MS does not make you more likely to develop COVID-19 or to become severely ill or die from the infection than the general population… [h]owever, certain factors have been shown to increase the risk of a severe case of COVID-19, [those factors include being] male [and] Black.4" The defendant claims that having "degenerative multiple sclerosis" is a risk factor, but the National Multiple Sclerosis Society's webpage does not list it as such (although it does list Progressive MS as a risk factor). Even if we assume being male and Black may increase the chances of experiencing severe symptoms for COVID-19, there is no evidence that the defendant has any symptoms of COVID-19. The defendant has been cleared by the medical staff of Wyatt and all COVID protocols have been lifted as they applied to the defendant. Moreover, the defendant fails to explain how a being a Black male may increase symptoms. If it is because Black men have less access to quality healthcare in the United States when compared to other segments of the population, that does not apply to the defendant – at least not while he is incarcerated at Wyatt. There is no evidence that the defendant has any less access to quality healthcare at Wyatt than any other inmate based on his race or any other characteristic. Again, the defendant does not allege that he has received substandard care at Wyatt, nor does he explain how living with his wife is necessary to safeguard his health. The defendant has utterly failed to make a case that he is at heightened risk remaining at Wyatt.

---

4 Multiple Sclerosis and Covid-19. https://www.national mssociety.org/coronavirus-covid-19-information/multiple-sclerosis-and-coronavirus

In his sealed letter to the Court, the defendant complains about the medical care he receives at Wyatt. The defendant claims, among other things, that he has been unable to obtain a medical mattress and that he needs steroids and physical therapy to treat his multiple sclerosis. With the permission of the defendant's counsel, the undersigned forwarded the defendant's letter to Wyatt in order that the facility could address the defendant's contentions. I discussed the letter's content with Chelsea Martin, the Health Services Administrator at Wyatt and received additional information from Edward Blanchette, MD, a physician at Wyatt.

According to Ms. Martin and Dr. Blanchette, the defendant is receiving appropriate medical care at Wyatt. If the medical staff at Wyatt believed that Wyatt could not provide appropriate care to the defendant, he would be moved to a more suitable facility. The defendant did not complain about COVID-19 symptoms and after his positive COVID-19 test he was treated under the COVID-19 protocols with cough syrup and Tylenol. The defendant never complained about incontinence or having had an "accident," but did report constipation, for which he was provided medication. The defendant's medical records indicate that he fell going to the restroom and that he was transported to the medical unit for four days of observation, where he received medication for back spasms. At the end of the four days, the defendant stated he no longer had issues relate to the fall, was medically cleared, and returned to his unit. In consideration of his multiple sclerosis, the defendant was housed on a ground floor tier and assigned a bottom bunk. The defendant's request for a different mattress was deemed not a medical necessity and was denied.

The defendant's claim that he uses a cane appear to be unfounded.  He has not been assigned a cane and Ms. Martin checked with a staff member working in the defendant's unit, who reported that the defendant did not use a cane.

The medical staff is seeking a neurologist consult and is waiting for approval from the Marshalls.  The defendant's private neurologist discontinued steroid treatment and the defendant is not receiving steroids.  If steroids are prescribed, they will be made available to the defendant. Defendant receives intravenous infusions of medicine to treat his multiple sclerosis.  The next treatment is due at the end of January.  The defendant has not missed any infusion treatment while at Wyatt.

Dr. Blanchette has requested a physical therapy consult for the defendant because physical therapy is standard for multiple sclerosis patients when they exhibit motor issues and because the notes from defendant's neurologist (William A. Torches, MD) indicate that he had planned to make such a referral.  Dr. Blanchett expects to receive approval from the Marshalls for the physical therapy consult next week and will then arrange for physical therapy.  The defendant is able to stretch and exercise on his unit or in the gym.

The defendant's claim that he is receiving inadequate care at Wyatt is not accurate.  As noted above, Wyatt is monitoring the defendant's health and ensuring that he receives the care he needs.

### The Defendant is a Danger to the Community

The seriousness of the defendant's crime cannot be overstated. The charge against the defendant involved selling a firearm with an obliterated serial number to an individual working with law enforcement.  As a convicted felon, it was illegal for the defendant to possess the

8

firearm he sold.   This Court is well aware of the tragic results of illegal gun sales and the possession of weapons by individuals who have lost their right to possess firearms.

The defendant has a long and troubling criminal record.   His criminal record includes convictions for breaking and entering a building in the nighttime to commit a felony, larceny from a building, Abuse Prevention Act violations, malicious destruction of property, resisting arrest, assault and battery with a dangerous weapon, distribution of a Class B controlled substance, intimidation of a witness, and being a felon in possession of a firearm.   Between 2001 and 2014, the defendant was the subject of nine restraining orders.

The danger posed by the defendant's release was made clear during the recent supervised release hearing when the Court received evidence that the defendant had been charged in Suffolk Country with strangulation and suffocation of his wife.   The undersigned attorney also submits that Defendant's demeanor during the final revocation hearing was alarming, as the defendant exhibited anger and hostility.

      b. **The Section 3553(a) Factors Weigh Heavily Against a More than 50% Reduction in the Defendant's Sentence.**

Even if this Court finds that the defendant's health constitutes an extraordinary and compelling reason upon which to grant relief, despite the fact that he now has natural immunity to COVID-19, the Court must still consider the section 3553(a) factors that led to the defendant's sentence of incarceration in the first place. 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13.   As an initial matter, the defendant has served approximately 42 days of a sentence of approximately 120 days (four months).   Under section 3553(a) the Court must consider a number of factors when determining an appropriate sentence, including general and specific deterrence, the need for the sentence to promote respect for the law and a sentence that is just punishment for the

9

offense. None of the goals of sentencing will be furthered by releasing the defendant early from incarceration. A reduction of the defendant's sentence on the basis offered by the defendant would send the wrong message to the defendant and others on supervised release.

### IV.     CONCLUSION

The COVID-19 pandemic is an unprecedented public health emergency, and every facet of our government is taking precautionary steps to slow the spread and impact. Even in the midst of this pandemic, the factors set forth in 18 U.S.C. § 3582(c), 18 U.S.C. § 3553(a), and the Sentencing Guidelines must still guide the Court in determining, on a case-by-case basis, whether compassionate release is appropriate. Because the defendant has failed to establish he is at a greater risk of harm incarcerated at Wyatt, remains a danger to the community, and because the factors under section 3553(a) weigh heavily against a reduction in his sentence, the Defendant's Motion should be denied.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:           */s/ David G. Tobin*
              DAVID G. TOBIN
              Assistant U.S. Attorney

## **CERTIFICATE OF SERVICE**

      I, David G. Tobin, hereby certify that this document filed through the ECF system on January 27, 2022, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                */s/ David G. Tobin*
                                                DAVID G. TOBIN